UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

EDWARD R.L. ALEXANDER,
                                 Plaintiff,

   vs.
                                                         9:04-CV-1298
W. WHITNEY; SGT. MITCHELL; RICHARD LAUX;   (J. Kahn)
CRAIG GUMMERSON
                                Defendants.

_____

EDWARD R.L. ALEXANDER, Plaintiff *Pro Se*
ADELE M. TAYLOR-SCOTT, Assistant Attorney General

GUSTAVE J. DI BIANCO, United States Magistrate Judge

# REPORT-RECOMMENDATION

    This matter has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

    In this amended civil rights complaint, plaintiff alleges that he was placed on a restricted diet based on a "false" misbehavior report. Amended Complaint ("AC")[1] at 1-2 (Dkt. No. 43). Plaintiff contends that the false misbehavior report was filed in retaliation for plaintiff's successful efforts in obtaining the dismissal of two previous misbehavior reports written by defendant Corrections Officer W. Whitney. AC at 2. Plaintiff seeks substantial monetary relief. *Id.* at 9.

    Presently before the court is defendants' motion for summary judgment

---

[1] The amended complaint is docket number 43. The court will cite the amended complaint only as "AC."

pursuant to FED. R. CIV. P. 56. (Dkt. No. 51). Plaintiff opposes defendants' motion. (Dkt. No. 53). For the following reasons, this court will recommend granting defendants' motion for summary judgment *in part*, and denying it *in part*. The court will recommend dismissal of the complaint, except for the retaliation claim against defendant C.O. Whitney.

## DISCUSSION

**1.     Summary Judgment**

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*. However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id*.

**2.     Facts**

On August 4, 2003, plaintiff was the subject of a misbehavior report issued by defendant Corrections Officer ("C.O.") W. Whitney. Mitchell Decl. Ex. A (Dkt. No. 51); Plaintiff's Ex. B (Dkt. No. 53). Plaintiff was housed in the Special Housing Unit ("SHU") at Auburn Correctional Facility. Defendant Whitney cited plaintiff for

failure to obey a direct order, harassment, and failure to keep clean quarters. *Id.* Defendant Whitney alleged in the misbehavior report that plaintiff had twelve cups in his cell, while the rules only allow inmates to have one cup at a time. *Id.* The misbehavior report also described a verbal exchange between defendant Whitney and plaintiff consisting of an explanation by defendant Whitney regarding the rules about the cups, and vulgarities by plaintiff directed at defendant Whitney. *Id.*

C.O. Whitney advised his supervisor, defendant Sergeant Mitchell, of the misbehavior report. Mitchell Decl. ¶ 4. Sergeant Mitchell "forwarded a request to either the Officer of the Day or the Deputy Superintendent of Security to place plaintiff on a pre-hearing restricted diet." Mitchell Decl. ¶ 12. Sergeant Mitchell states, "I made my request based upon plaintiff's disciplinary problems and the severity of the instant charge." Mitchell Decl. ¶ 13. On August 4, 2003, defendant Physician's Assistant ("PA") Richard Laux gave medical approval for plaintiff to be placed on the pre-hearing restricted diet. Holohan Aff. Ex. D at 2 (Dkt. No. 51). On August 5, 2003, the Superintendent of Auburn advised the Commissioner of the Department of Correctional Services ("DOCS") that defendant Laux approved plaintiff's restricted diet, and that plaintiff would be on the restricted diet until August 11, 2003. Holohan Aff. Ex. D at 1.

On August 5, 2003, plaintiff wrote to "D.S.S. Bratt"[2], stating that plaintiff had wrongfully been placed on a restricted diet, and requesting that the restriction be lifted. Gummerson Decl. Ex. A (Dkt. No. 51). In the letter to Deputy Superintendent

---

[2]The correct spelling of the Deputy Superintendent of Security's name is Bradt.

3

of Security ("D.S.S.") Bradt, plaintiff complained that defendant Whitney was retaliating against plaintiff because of the dismissal of a previous Tier III ticket. Gummerson Decl. Ex. A at 3. Defendant Craig Gummerson was the Acting Deputy Superintendent of Security, and he initiated an investigation into plaintiff's complaint by referring the matter to Lieutenant Head. Gummerson Decl. ¶¶ 1, 5-7.

Defendant Mitchell investigated plaintiff's complaint, and on August 7, 2003, defendant Mitchell wrote a report to Lieutenant Head, stating that Mitchell had conducted two interviews regarding the incident, one of plaintiff, and one of "Inmate Vaughan." Gummerson Decl. Ex. C. The report stated that plaintiff did not add anything to his written statement, and Inmate Vaughan "simply stated that Officer Whitney was harassing Inmate Alexander . . . [but described] nothing specific. Officer Whitney has provided a written statement denying any wrong doing. I find no evidence of wrong doing by staff." *Id.* On August 25, 2003, Lieutenant Head summarized the results of Sergeant Mitchell's investigation in a memorandum addressed to D.S.S. Bradt. Gummerson Decl. Ex. D. On August 26, 2003, defendant Gummerson wrote to plaintiff, stating that no evidence had been found to support plaintiff's allegations, and that the pre-hearing restricted diet was approved by the appropriate staff. Gummerson Decl. Ex. E.

Plaintiff's hearing on the August 4, 2003 misbehavior report began on August 10, 2003, and was conducted by Lieutenant Head. Plaintiff's Ex. G at 1 (Dkt. No. 53). According to plaintiff, he requested that the restricted diet be discontinued for the duration of the hearing, but Lieutenant Head denied the request. AC ¶¶ 31-32. The

hearing concluded on August 15, 2003, and plaintiff was found not guilty on all charges. Plaintiff's Ex. G at 1).  Lieutenant Head stated that "the review of Video Tape for time frame of MBR shows that there was no verbal exchange, direct order given or inappropriate inmate conduct by Alexander to support charges in the MBR." Plaintiff's Ex. G at 2.  Plaintiff was subjected to the restricted diet for twelve days as a result of the August 4, 2003 misbehavior report.[3]  Deposition Transcript ("T.") at 44 (Holohan Aff. Exhibit A)(Dkt. No. 51).

Plaintiff submits an Inmate Misbehavior Report dated June 29, 2003.  Plaintiff's Ex. H at 1.  The June 2003 misbehavior report states that at approximately 8 a.m. on June 29, 2003, plaintiff threatened and verbally harassed defendant Whitney.  *Id*.  Plaintiff also submits paperwork showing the disposition of the June 2003 Misbehavior Report. Plaintiff's Ex. H at 3.  "J. Thomas" determined that plaintiff was not guilty of the June 2003 allegations by defendant Whitney. *Id.* at 2.  Thomas stated "hearing officer viewed videotape of date, time, and location from approximately 7:00 a.m.-8:45 p.m.  No evidence of verbal harassment or threats from inmate to officer . . . Audio/video does not support charges in Misbehavior Report." *Id.* at 3.  Although plaintiff claims in his amended complaint that *two* of defendant Whitney's misbehavior reports were dismissed *prior to* the August 4, 2003 Misbehavior Report, (AC ¶ 7), he has only submitted documents related to *one* misbehavior report (June

---

[3] At his deposition, plaintiff stated that he was on the restricted diet until August 15, 2003. (T. at 44).

5

2003) other than the August 4, 2003 Misbehavior Report.[4]

Plaintiff was deposed in this case on April 19, 2006. During the deposition, plaintiff admitted that on August 4, 2003, he had more than one cup in his cell. (T. 27-28). At the deposition, the Assistant Attorney General also noted that in plaintiff's August 5, 2003 letter to D.S.S. Bradt complaining of the pre-hearing restricted diet, plaintiff also admitted to having two cups in his cell. *Id*. *See also* Gummerson Decl. Ex. A at 3.

Plaintiff makes several claims related to the August 4, 2003 Misbehavior Report, and plaintiff's subsequent placement on a restricted diet.

1. Plaintiff alleges that defendant Whitney filed a false misbehavior report against plaintiff in retaliation for the exercise of plaintiff's First Amendment right to redress of grievances. AC ¶¶ 7-8.

2. Plaintiff claims that defendant Whitney violated plaintiff's Eighth Amendment rights by filing a false misbehavior report that resulted in the imposition of a restricted diet. AC ¶ 15.

3. Plaintiff alleges that defendant PA Laux was deliberately indifferent to plaintiff's serious medical needs when defendant Laux approved plaintiff for the restricted diet, notwithstanding plaintiff's allergy to carrots. AC ¶¶ 13-14.

4. Plaintiff alleges that defendants Whitney, Mitchell, and Laux violated New York State regulations when they imposed the restricted diet. AC ¶¶ 16, 17, 17, 24.

5. Plaintiff alleges that defendant Gummerson is responsible for the violations of plaintiff's constitutional rights. AC ¶ 40.

---

[4]Plaintiff may be asserting that the two false misbehavior reports were for the June 29, 2003 incident and the August 4, 2003 incident. (Dkt. No. 53, Memorandum of Law, 6). No evidence has been submitted regarding any other misbehavior report.

6

Defendants argue that plaintiff's claims fall into two categories, those related to his placement on the restricted diet, and those related to the alleged retaliation. Defendants argue that plaintiff's claims regarding the restricted diet have no basis in law or fact, and that because plaintiff admitted a rule violation, he cannot meet the standard for a retaliation claim.

### 3.     **Respondeat Superior**

It is well-settled that in order to be held liable for damages in a section 1983 action a defendant must have been personally involved in the alleged violation. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978). The doctrine of respondeat superior is inapplicable to section 1983 claims. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973), *cert. denied*, 414 U.S. 1033 (1973).

In *Williams v. Smith*, the Second Circuit detailed the various ways in which a defendant can be personally involved, and thus be subject to individual liability, in a constitutional deprivation. *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986). A supervisory official is said to have been personally involved if that official directly participated in the infraction. *Id*. A supervisory official is said to have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id*. Personal involvement of a supervisory official is said to exist if he or she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id*. Finally, a supervisory official may be personally involved if he or she were grossly negligent in

managing subordinates who caused the unlawful condition or event. *Id*.

Plaintiff claims that defendant Gummerson's investigation of plaintiff's letter regarding his placement on a restricted diet was insufficient, and therefore, plaintiff's due process rights were violated. AC ¶¶ 37-41. In his declaration, defendant Gummerson states that on August 5, 2003, his office received plaintiff's letter of complaint. Gummerson Decl. ¶ 5 & Ex. A. Plaintiff's letter[5] claimed that C.O. Whitney was retaliating against plaintiff, and that plaintiff had improperly been placed on a restricted diet. Gummerson Decl. Ex. A.

An allegation that an official ignored a prisoner's letter of protest or request for investigation is insufficient to establish personal involvement. *Smart v. Goord*, 441 F. Supp. 2d 631, 642-43 (S.D.N.Y. 2006). In addition, where the supervisor's involvement is limited to forwarding correspondence to the appropriate staff, the supervisor does not have sufficient personal involvement in the alleged violation. *Ortiz-Rodriguez v. NY State Dep't of Correctional Services*, 491 F. Supp. 342, 347 (W.D.N.Y. 2007).

In this case, defendant Gummerson states that his "office" referred plaintiff's letter to Lieutenant Head for investigation. Gummerson Decl. ¶ 7. The memorandum referring the investigation to Lieutenant Head is from "M.L. Bradt, Deputy Superintendent of Security." Gummerson Decl. Ex. B. Lieutenant Head then delegated the investigation to Sergeant Mitchell. Gummerson Decl. Ex. B. Sergeant Mitchell conducted three interviews, and obtained a written report from C.O. Whitney.

---

[5] Plaintiff's letter was actually addressed to DSS Bradt, but was apparently forwarded to defendant Gummerson's office. Gummerson Decl. ¶ 5 & Ex. A.

8

Gummerson Decl. Ex. D.

Defendant Gummerson did *not* perform any part of the investigation himself. In fact, it does not even appear that he saw plaintiff's letter himself. Plaintiff's letter was addressed to D.S.S. Bradt, and the memorandum referring the letter to Lieutenant Head for investigation was from D.S.S. Bradt. Defendant Gummerson's only involvement with plaintiff was when Gummerson advised plaintiff of the result of the investigation by letter dated August 26, 2003, after obtaining the report from his subordinate. Gummerson Decl. ¶ 11 & Ex. E. Defendant Gummerson's letter to plaintiff specifically states that "[a] security supervisor investigated your allegations of misconduct." Gummerson Decl. Ex. E.

Plaintiff claims that defendant Gummerson personally told plaintiff the results of the investigation in a conversation. AC ¶ 38. The record shows that defendant Gummerson wrote plaintiff a letter, relating the results of the investigation. Gummerson Decl. Ex. E. Even assuming that defendant Gummerson spoke to plaintiff, he was only reporting the results of an investigation in which he did not participate. Thus, this court finds that plaintiff has not alleged sufficient personal involvement by defendant Gummerson, and the complaint may be dismissed as against this defendant.

## 4.  Restricted Diet

### A. Carrot Allergy

Plaintiff does *not* make any claim regarding the constitutionality of the restricted diet itself. Rather, plaintiff claims that because he is allergic to carrots, and

9

because there are carrots in the restricted diet, plaintiff was subjected to cruel and unusual punishment in violation of the Eighth Amendment. AC ¶ 14. Plaintiff claims that he suffered loss of "sleep, weight loss, stomach pain . . . constipation . . . [and] nightmares. AC ¶ 44. Plaintiff states he must take certain medications with food and milk, and that he was unable to take those medications while on the restricted diet. AC ¶¶ 46, 47. Plaintiff also states that he is epileptic, and that his life was in danger during the period that he was unable to take his epilepsy medications as directed. AC ¶ 47.

The Eighth Amendment requires that inmate be served nutritionally adequate food that is prepared and served under conditions that do not present an immediate danger to plaintiff's health or safety. *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983)(per curiam). In order for a defendants to be liable for an Eighth Amendment violation, the defendants must know of, and disregard an excessive risk to inmate health or safety. *Phelps v. Kapnolas*, 308 F.3d 180, 185-86 (2d Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The defendants must also have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm" to plaintiff existed, and must have also drawn that inference. *Id.*

In this case, plaintiff's concern for his health and safety is his claimed allergy to carrots. Plaintiff submits medical records that show that he advised medical personnel at Auburn on February 26, 2003 that he was allergic to carrots. Plaintiff's Ex. D at 1. (Dkt. No. 53). Plaintiff's Ambulatory Health Record ("AHR") shows that as of March 19, 2003, Auburn medical personnel were waiting for the "Rast test results" in order

10

to verify plaintiff's allergies. Plaintiff's Ex. D at 2. There are no medical records submitted to this court for the period between March 19, 2003 and April 28, 2003.

However, in the AHR submitted by defendants, an entry dated November 11, 2004[6] states that "per reg. dietician no allergy to carrots," Holohan Aff. Ex. B at 100. An entry dated November 16, 2004 shows that plaintiff was claiming an allergy to carrots, but that medical personnel reviewed the "allergen panel of 3/7/03" and found "[n]o allergy to carrots per 3/7/03 test. Recommend advise [plaintiff] no medical necessity to avoid carrots." *Id.* The actual test results from the March 7, 2003 allergen panel have not been submitted, however, the court notes that medical personnel at Auburn would have had access to the test results in August 2003.[7]

Plaintiff was also monitored during the period that he was on the restricted diet in August 2003. On August 6, 2003, he was examined by at least two medical personnel, and neither individual noted any complaint regarding the restricted diet. Holohan Aff. Ex. B at 23. On August 9, 2003, the notes state, "on loaf diet, denies any [complaints], no [signs] of dehydration noted, alert voice strong & clear". *Id.* Notes from August 10, 2003 also show that plaintiff was not suffering dehydration and appeared to be alert. *Id.* at 24. The only complaints that plaintiff appears to have

---

[6] Plaintiff was at Five Points Correctional Facility at the time of this entry.

[7] In defendants' Memorandum of Law in support of their motion for summary judgment, the Assistant Attorney General argues:
> Tellingly, plaintiff never reported any allergy to carrots to DOCS medical staff under [sic] September 21, 2003 - six weeks after being placed on the restricted diet at issue here.

Plaintiff has submitted evidence that this statement is mistaken, and that plaintiff claimed an allergy to carrots to Auburn medical personnel as early as February 2003. Plaintiff's Ex. D at 1.

11

made to medical personnel during the period that he was on the restricted diet from August 4, 2003 until August 15, 2003 are related to a hip injury, and none of the notes state that he was experiencing ill effects from the restricted diet. *Id.* at 23-25.

The record does not substantiate plaintiff's claim that he is allergic to carrots, nor that his health and safety were in any danger because of his consumption of carrots while on the restricted diet.[8]  Furthermore, neither corrections officials nor the medical personnel should have been aware of any carrot allergy because allergy tests conducted in March 2003 indicated that plaintiff was *not* allergic to carrots. The only allergies listed for plaintiff are fish and mayonnaise. Holohan Aff. Ex. C.[9]  There is absolutely no evidence that plaintiff's health or safety were in danger during the time that he was placed on the restricted diet because plaintiff's medical records indicate that in March of 2003, his test for a carrot allergy was negative. Based upon this information, the defendants could not have been deliberately indifferent to a serious medical need. Therefore, the court recommends that plaintiff's Eighth Amendment claims against defendants C.O. Whitney, P.A. Laux, Craig Gummerson, and Sergeant Mitchell be dismissed.

### B. New York Regulations

Plaintiff makes a number of claims related to defendants' failure to follow New York State regulations with respect to plaintiff's placement on, and the administration

---

[8] The "restricted diet" generally consists of a food "loaf" that contains a variety of ingredients, including carrots and potatoes. *See Phelps v. Kapnolas*, 94-CV-7543, 2005 U.S. Dist. LEXIS 45581, *5-6 & n.3 (W.D.N.Y. May 31, 2005)(citation omitted).

[9] The date of this document is unclear. It appears to be dated April 10, but the year is illegible. Holohan Aff. Ex. C.

of, the restricted diet. It is, however, federal constitutional standards, rather than state law or regulations, that govern the requirements of procedural due process. *Russell v. Coughlin*, 910 F.2d 75, 78 n. 1 (2d Cir. 1990). Thus, the violation of state law does ***not*** necessarily rise to the level of a constitutional violation.

In this case, plaintiff claims that the rule that dictates what an inmate may keep in his cell was not enforced at the correct time.[10] AC ¶¶ 18-19, 24. Plaintiff claims that the offense that was the subject of the August 4, 2003 Misbehavior Report should not have resulted in placement on a pre-hearing restricted diet. AC ¶ 20. Plaintiff claims that defendant Laux incorrectly listed plaintiff's offense when defendant Laux medically approved plaintiff for the restricted diet. AC ¶¶ 22-23. Plaintiff claims that he should have been restored to a regular diet at the commencement of his hearing on August 10, 2003.[11] AC ¶ 32. Plaintiff claims that he should have had a two day reprieve from the restricted diet after being served the restricted diet for a certain number of days. AC ¶ 43.

Plaintiff alleges no constitutional claims relating to the above claims. To the extent that plaintiff claims that defendant Laux incorrectly listed plaintiff's offense when approving the diet, it is clear that defendant Laux, as a Physician's Assistant would only have reviewed plaintiff's placement on the diet for medical reasons, not to

---

[10]Specifically, plaintiff claims that the regulation only allows enforcement during the distribution and conclusion of meals.

[11]Plaintiff does not name as a defendant the corrections official who denied plaintiff's request to stop the restricted diet. At his deposition, plaintiff acknowledged that it is in the Hearing Officer's discretion to continue or discontinue the restricted diet at the commencement of the inmate's hearing. (T. 49).

13

determine whether the charges were appropriate for the imposition of the diet. To the extent that plaintiff alleges that defendants failed to abide by New York State regulations,[12] the court recommends that plaintiff's claims be dismissed as against all defendants.

5. **Retaliation**

Plaintiff claims that defendant C.O. Whitney filed a false misbehavior report and initiated the process to have plaintiff placed on a restricted diet in retaliation for plaintiff's successful efforts to have at least one prior misbehavior report dismissed, and for plaintiff's filing of grievances and an Article 78 petition related to the prior misbehavior report.[13] AC ¶ 7. Plaintiff claims that defendants Mitchell and Laux improperly relied on defendant Whitney's "false" misbehavior report when defendant Mitchell requested[14] and defendant Laux medically approved plaintiff to be placed on

---

[12] Although plaintiff does not allege a federal due process claim, the court notes that it has been held that the mere imposition of a short dietary restriction, without the additional allegation that the diet endangered the inmates health, does not demonstrate an "atypical and significant" hardship sufficient to create a liberty interest for purposes of a federal due process analysis. *See Marcum v. Jones*, 1:06-CV-108, 2006 U.S. Dist. LEXIS 12004 *8-9 (S.D. Ohio March 3, 2006)(citing *inter alia Johnson v. Gummerson*, 1999 U.S. App. LEXIS 23702, *3-4 (2d Cir. Sept. 24, 1999)). Because this court has found no danger to the inmate's safety, plaintiff would also be unable to state a due process claim.

[13] The Second Circuit has held that "the filing of unfounded charges is not *per se* a constitutional violation under section 1983." *Freeman v. Rideout*, 808 F.2d 949, 950 (2d Cir. 1986), *cert. denied*, 485 U.S. 982 (1988).

[14] Defendant Sergeant Mitchell stated that he relied on plaintiff's disciplinary record and the "severity of the instant charge" when he requested that plaintiff be placed on a restricted diet. It is unclear whether Sergeant Mitchell included the later-dismissed June 29, 2003 incident in that calculation. In any event, plaintiff has a lengthy disciplinary record at the correctional facilities where he was housed prior to his incarceration at Auburn. The court notes, however, that plaintiff's disciplinary record does not include any incidents at Auburn until after the resolution of the August 4, 2003 Misbehavior Report. The court also notes that the first incident of which plaintiff was found guilty at Auburn was reported by C.O. Whitney on August 29, 2003.

the restricted diet. AC ¶¶ 3, 11-12.

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for adverse action taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997)). The court must keep in mind that claims of retaliation are "easily fabricated" and thus, plaintiff must set forth non-conclusory allegations. *Id*. (citing *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)).[15]

The court in *Dawes* stated that in order to survive **summary dismissal**, the plaintiff's "non-conclusory" allegations must establish

> (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action.

239 F. 3d at 492 (citations omitted). Subsequent Second Circuit cases have held that, in a prison context, all that is required is that the adverse conduct by defendant would have deterred a similarly situated individual of ordinary firmness from exercising his

---

Mitchell Decl. Ex. B.

[15]The court would note that *Dawes* did not create a "heightened pleading standard," and to the extent that it did create such a standard, the Second Circuit held that *Dawes* was inconsistent with *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002). *See Phelps v. Capnolas*, 308 F.3d 180, 187 (2d Cir. 2002). The decision in *Phelps* resulted from a motion to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6), and the court was considering only the face of the complaint. This case comes before the court upon a motion for summary judgment, thus, this case is distinguishable from a situation in which only the complaint is being examined.

First Amendment rights.  *See Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004).  In *Gill*, the court held that this objective test applied, even where a particular plaintiff was ***not subjectively deterred*** and continued to file grievances and lawsuits.  *Id*.

In this case, defendants concede that plaintiff filed grievances complaining about defendant Whitney. Defs. Memo. of Law at 5.  Under *Graham v. Henderson*, "plaintiff's grievances constitute protected activity for purposes of a retaliation claim." *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996).  *See also Franco v. Kelly*, 854 F.2d 584 (2d Cir. 1988).

The August 4, 2003 misbehavior report constitutes an adverse action taken by defendant Whitney.  Defendants argue that plaintiff is unable to establish a causal connection between the protected activity and the misbehavior report. Defs. Memo. of Law at 5.  In *Graham v. Henderson*, the Second Circuit held that in a retaliation claim, plaintiff must meet the burden of demonstrating two genuine issues of material fact:

> (1) that the disciplined conduct was constitutionally protected, and (2) that his punishment was motivated, in whole or in part, by his conduct–in other words, that the prison officials' actions were substantially improper retaliation.

*Graham v. Henderson*, 89 F.3d at 80.  Assuming the plaintiff meets this burden, his claim will not survive summary judgment if the defendants can show that there is no genuine issue as to the fact that plaintiff would have received the same punishment even if there had been no improper motivation. *Id. See Mount Healthy School District v. Doyle*, 429 U.S. 274, 287 (1977).

The court disagrees with defendants' argument regarding plaintiff's evidence of

causal connection. Plaintiff submitted paperwork related to the disposition of two misbehavior reports where plaintiff was found *not* guilty. Plaintiff's Ex. G (8/4/03 Incident) and H (6/29/03 incident). The Hearing Officer rendered a decision on the June 29, 2003 Misbehavior Report on July 15, 2003. The August 4, 2003 incident occurred a little over two weeks after the resolution of the June 29, 2003 incident. However, the temporal relationship is not the only connection between plaintiff's grievance regarding the first misbehavior report and the August 4, 2003 Misbehavior Report.

The more important relationship between the two incidents charged against plaintiff by defendant Whitney is the language used by the two different Hearing Officers who found plaintiff not guilty. On July 15, 2003, the Hearing Officer stated that he "viewed the videotape of date, time, location from approximately 7:00 a.m. - 8:45 p.m. No evidence of verbal harassment or threats from inmate to officer . . . Audio/video does not support charges in Misbehavior Report." Plaintiff's Ex. H at 3. On August 15, 2003, the Hearing Officer stated that "the review of the Video Tape for time frame of MBR shows that there was no verbal exchange, direct order given or inappropriate inmate conduct by [plaintiff] to support charges in the MBR. . . Inmate was not guilty of charges in the MBR as specified by the time frame indicated on report." Plaintiff's Ex. G at 3. It appears that *two different Hearing Officers* found that *two separate incidents* forming the basis for misbehavior reports written by defendant Whitney *never occurred*.

The court finds that plaintiff's filing of grievances against C.O. Whitney was

17

constitutionally protected conduct. Plaintiff has also demonstrated a genuine issue of material fact at least as to defendant Whitney's motivation in filing a *second* misbehavior report related to an incident deemed not to have occurred by a Hearing Officer. Defendants argue that because plaintiff admitted to violating the rule regarding how many cups he was permitted to have in his cell, defendants have shown that plaintiff would have been punished, regardless of any improper motivation. Defendants' Memo. at 6.

The court finds that in this case, whether or not plaintiff had more cups than he was permitted is less important than the inconsistencies between defendant Whitney's misbehavior reports and the video evidence cited by the Hearing Officers. Defendant C.O. Whitney apparently did not have any interaction at all with plaintiff at the time that C.O. Whitney claimed that plaintiff used vulgarities and failed to obey Whitney's orders regarding the cups in his cell. There is a genuine issue of material fact related to whether plaintiff would have ever been charged with misbehavior at all. Plaintiff has submitted evidence of two misbehavior reports filed by C.O. Whitney where plaintiff was found *not guilty* because the incident *did not occur* as described by C.O. Whitney. Defendants are unable to meet their burden of showing that there is no genuine issue of fact on this issue with respect to defendant Whitney.[16] Defendants can not now argue that plaintiff would have "received the same punishment" because plaintiff was found not guilty of the misbehavior, and there is clearly a question of fact

---

[16] The court notes that no Statement of Material Facts pursuant to Local Rule 7.1(a)(3) from the defendants appears on the docket. Plaintiff filed a Statement of Material Facts in his reply to the summary judgment motion. (Dkt. No. 53).

as to whether plaintiff would have ever been charged with any misbehavior.

Defendant Laux, however, is a Physician's Assistant, and had the responsibility of determining whether plaintiff was medically fit enough to receive the restricted diet. There is no connection between defendant Laux's medical duties regarding plaintiff and the charges or the disciplinary proceeding. Plaintiff has made no showing that defendant Laux had any knowledge of plaintiff's prior disciplinary problems at Auburn or any other facility. It was not within defendant Laux's duties to compare the offenses in the Misbehavior Report with the list of offenses which permit a pre-hearing restricted diet. Defendant Laux's only connection to this plaintiff was his medical opinion that plaintiff was healthy enough to receive the restricted diet. There is no evidence therefore that defendant Laux had any involvement in any possible retaliation by defendant Whitney.

Defendant Mitchell requested that plaintiff be placed on a restricted diet. Defendant Mitchell stated that he used plaintiff's previous disciplinary record and the seriousness of the August 4, 2003 incident to decide to make that request. Defendant Mitchell likely would have been aware of the June 29, 2003 incident, but it is unclear to the court that Mitchell was aware of the "not guilty" resolution of the June 2003 incident. However, defendant Mitchell was aware of, and relied on the lengthy list of plaintiff's prior disciplinary problems including violations of regulations relating to utensils, threats against corrections officers, and failures to obey orders. Mitchell Decl. Ex. B. Plaintiff has made no showing of any improper motivation on the part of the defendant Sergeant Mitchell.

With respect to defendants P.A. Laux and Sergeant Mitchell, the court finds no genuine issue of material fact related to plaintiff's retaliation claims. Neither defendant Laux nor defendant Mitchell took any action in filing the August 4, 2003 misbehavior report, and no showing has been made of any improperly motivated action in their activities after the report was filed. Therefore, the court recommends that the complaint be dismissed as against defendants Laux and Mitchell.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 51) be **DENIED ONLY AS TO THE CLAIM OF RETALIATION AS AGAINST DEFENDANT WHITNEY**, and it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 51) be **GRANTED IN ALL OTHER RESPECTS**, and the complaint dismissed in its entirety as to Defendants **LAUX, MITCHELL,** and **GUMMERSON**.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 17, 2008

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge